Nos. 17-35587, 17-35588

# In the United States Court of Appeals for the Ninth Circuit

VHT, INC.,
PLAINTIFF-APPELLEE/
CROSS-APPELLANT

*v.*

ZILLOW GROUP, INC. AND ZILLOW, INC.,
DEFENDANTS-APPELLANTS/CROSS-APPELLEES

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON (CIV. NO. 15-1096)
(THE HONORABLE JAMES L. ROBART, J.)*

**BRIEF OF AMICI CURIAE DISNEY ENTERPRISES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, AND RECORDING INDUSTRY ASSOCIATION OF AMERICA, INC. IN SUPPORT OF CROSS-APPELLANT VHT, INC.**

THOMAS G. HENTOFF
CHANAKYA A. SETHI*
WILLIAMS & CONNOLLY LLP
*725 Twelfth Street, N.W.*
*Washington, DC 20005*
*(202) 434-5000*

## CORPORATE DISCLOSURE STATEMENT

1. Disney Enterprises, Inc. is a wholly-owned subsidiary of The Walt Disney Company, a publicly-held company.

2. Twentieth Century Fox Film Corporation is an indirect, wholly-owned subsidiary of Twenty-First Century Fox, Inc., a publicly-held company.

3. The Recording Industry Association of America, Inc., has no parent corporation, and no publicly-held company holds more than 10 percent of its stock.

---

[*] Admitted only in New York. Practice limited to federal litigation outside the District of Columbia and ADR proceedings.

## TABLE OF CONTENTS

Page

Summary of Argument ....................3

Argument ....................6

I. The Court Should Further Clarify the Role of Causation in Assessing Claims of Direct Copyright Infringement. ....................6

A. This Court's Recent Decision in *Giganews* Leaves Open Important Questions About the Scope of Direct Infringement. ....................6

B. *Giganews* Helped Dispel Years of Uncertainty by Clarifying that "Volitional Conduct" Means Causation. ....................8

II. Determining Proximate Causation in Tort and Copyright Law Requires an Analysis of the Totality of an Alleged Infringer's Conduct. ....................13

A. Proximate Causation Is a Familiar and Well-Established Doctrine for Delineating the Scope of Liability. ....................13

B. In the Areas of Both Tort Liability and Copyright Infringement, Courts Have Identified a Wide Range of Conduct That Demonstrates Sufficient Causation To Establish Direct Liability. ....................15

C. Artificial Limitations on Liability for Direct Copyright Infringement Are Contrary to Both Proximate Cause Doctrine and Copyright Precedent. ....................23

1. Multiple Actors May Be Directly Liable for the Same Infringement. ....................23

2. An Actor Is Equally Subject to Direct Liability Whether Its Infringing Conduct Is Automated or Manual....25

3. The Existence of Secondary-Infringement Causes of Action Is No Basis for Narrowing the Scope of Direct Copyright Infringement....28

III. Determining Causation Requires Analyzing Infringement of Different § 106 Exclusive Rights Differently. ....30

Conclusion....34

## TABLE OF AUTHORITIES

Page

### CASES

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) .......... 9

*American Broadcasting Cos. v. Aereo, Inc.*,
134 S. Ct. 2498 (2014) .......... *passim*

*Arista Records LLC v. Usenet.com, Inc.*,
633 F. Supp. 2d 124 (S.D.N.Y. 2009) .......... 22

*Associated Gen. Contractors of Cal., Inc. v. Carpenters*,
459 U.S. 519 (1983) .......... 16

*Blue Shield of Virginia v. McCready*,
457 U.S. 465 (1982) .......... 15, 31

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) .......... 15, 28

*Buck v. Jewell-La Salle Realty Co.*,
283 U.S. 191 (1931) .......... 9

*BWP Media USA, Inc. v. T&S Software Assocs., Inc.*,
852 F.3d 436 (5th Cir. 2017) .......... 17

*Capitol Records, LLC v. ReDigi Inc.*,
934 F. Supp. 2d 640 (S.D.N.Y. 2013) .......... 20, 27

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
536 F.3d 121 (2d Cir. 2008) .......... *passim*

*CoStar Grp., Inc. v. LoopNet, Inc.*,
373 F.3d 544 (4th Cir. 2004) .......... 17, 21

*County of Maricopa v. Maberry*,
555 F.2d 207 (9th Cir. 1977) .......... 26

Page

*CSX Transp., Inc. v. McBride*,
564 U.S. 685 (2011)........................................................................14

*Disney Enters., Inc. v. VidAngel, Inc.*,
224 F. Supp. 3d 957 (C.D. Cal. 2016) ....................................................19

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
844 F.3d 79 (2d Cir. 2016) ..................................................................9, 20, 27

*Exxon Co., U.S.A. v. Sofec, Inc.*,
517 U.S. 830 (1996)........................................................................15

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)........................................................................9

*Fox Broad. Co. v. Dish Network LLC*,
747 F.3d 1060 (9th Cir. 2014)..............................................................7, 14, 23

*Henderson v. Nat'l R.R. Passenger Corp.*,
412 F. App'x 74 (10th Cir. 2011)...........................................................24

*Holmes v. Securities Investor Protection Corp.*,
503 U.S. 258 (1992)........................................................................16

*Joseph B. Thomas*,
86 F. 658 (9th Cir. 1898)..................................................................24

*Levy v. Minnesota Life Ins.*,
517 F.3d 519 (7th Cir. 2008)...............................................................24

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
134 S. Ct. 1377 (2014) ....................................................................14, 15, 31

*MGM Studios Inc. v. Grokster Ltd.*,
545 U.S. 913 (2005)........................................................................29

*Milwaukee & St. Paul R. Co. v. Kellogg*,
94 U.S. 469 (1877)........................................................................16

Page

*Pacific Operators Offshore, LLP v. Valladolid*,
565 U.S. 207 (2012)....................15

*Paroline v. United States*,
134 S. Ct. 1710 (2014)....................16

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007)....................19, 20, 27

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017)....................*passim*

*Playboy Enters., Inc. v. Russ Hardenburgh, Inc.*,
982 F. Supp. 503 (N.D. Ohio 1997)....................22

*Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.*,
338 F. App'x 329 (4th Cir. 2009)....................20

*Religious Technology Center v. Netcom On-Line Communication Services, Inc.*,
907 F. Supp. 1361 (N.D. Cal. 1995)....................*passim*

*Smith v. BarnesandNoble.com, LLC*,
143 F. Supp. 3d 115 (S.D.N.Y. 2015)....................21, 22

*Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*,
689 F.3d 29 (1st Cir. 2012)....................10, 25

*Sony Corp. of America v. Universal City Studios, Inc.*,
464 U.S. 417 (1984)....................28, 29

*Waters v. Merchants' Louisville Ins.*,
11 Pet. 213 (1837)....................14

Page

## STATUTES AND LEGISLATIVE MATERIALS

17 U.S.C. § 101 .......... 32

17 U.S.C. § 106 .......... *passim*

17 U.S.C. § 106(1) .......... 20, 30, 31

17 U.S.C. § 106(2) .......... 31

17 U.S.C. § 106(3) .......... 21, 31

17 U.S.C. § 106(4) .......... 19, 30

17 U.S.C. § 106(5) .......... 20, 31

17 U.S.C. § 512 .......... 10

Digital Millennium Copyright Act,
Pub. L. No. 105-304, 112 Stat. 2860 .......... 9

H.R. Rep. No. 1476, 9th Cong., 2d Sess. (1976) .......... 32

## OTHER AUTHORITIES

3 Stuart M. Speiser et al.,
*The American Law of Torts* (West 2017) .......... 16

Dan Dobbs et al., *Dobb's Law of Torts* (2d ed. West 2017) .......... 24

Eleanor M. Lackman & Scott J. Sholder,
*The Role of Volition in Evaluating Direct Copyright Infringement Claims Against Technology Providers*,
22 N.Y.S.B.A. Bright Ideas 3 (Winter 2013) .......... 12

4 Melville B. Nimmer & David Nimmer,
*Nimmer on Copyright* (Lexis 2017) .......... 7, 11, 12

2 Paul Goldstein, *Goldstein on Copyright* (3d ed. Lexis 2017) .......... 11, 25, 27

Page

Rebecca Giblin & Jane C. Ginsburg,
*We (Still) Need To Talk About* Aereo*: New Controversies and Unresolved Questions after the Supreme Court's Decision*,
38 Colum. J.L. & Arts 109 (2015) .......... 10

Restatement (Second) of Torts (1964) .......... 14

W. Page Keeton et al.,
*Prosser and Keeton on Torts* (5th ed. 1984) .......... 14, 24, 26

## INTEREST OF AMICI CURIAE

Amici respectfully submit this brief supporting plaintiff and cross-appellant VHT, Inc. In *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir.), *cert. denied*, No. 17-320, __ S. Ct. __ (2017), the Ninth Circuit recently clarified that what some other courts have called a "volitional conduct" requirement for direct infringement under the Copyright Act is merely a causation requirement, based on traditional tort principles of proximate causation. Amici urge this Court to evaluate VHT's claims of direct copyright infringement in light of this decision and apply a flexible causation analysis that is faithful to the principles of proximate causation as they have been articulated in tort and copyright cases. This is an important issue to amici and to copyright owners generally as direct infringers continue to invoke an ill-defined "volitional conduct" concept as a shield from liability for their infringing acts.[1]

Amici Disney Enterprises, Inc. and Twentieth Century Fox Film Corporation and their affiliated companies own or control the copyrights in, and are among the leading producers and distributors of, some of the most popular

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than amici or their counsel has made any monetary contributions intended to fund the preparation or submission of this brief. The parties have consented to the filing of this brief.

and critically acclaimed motion pictures and television programs in the world. They and their affiliates distribute their content in theatrical, television, and home entertainment markets in all formats and all channels of distribution, including online distribution.

Amicus Recording Industry Association of America, Inc. ("RIAA") is the trade organization that supports and promotes the creative and financial vitality of the major recorded music companies. Its members are the music labels that constitute the most vibrant record industry in the world. RIAA members create, manufacture, and distribute copyrighted sound recordings accounting for the great majority of all legitimate recorded music produced and sold in the United States.

Amici and the members of amici RIAA depend upon the protection afforded by the Copyright Act to ensure the continued creation and availability of their works. Amici accordingly have a strong interest in the proper application of the Copyright Act, including the standard for determining when a defendant that makes copies of copyrighted works, or engages in any other activity implicating the exclusive rights set forth in 17 U.S.C. § 106, is a legal

cause of the copying such that it may be liable for direct copyright infringement.[2]

## SUMMARY OF ARGUMENT

I. This case presents an opportunity for this Court to further clarify the answer to an important question: What is the role of causation in assessing direct infringement claims under the Copyright Act? This Court recently acted to help dispel years of uncertainty when it concluded that a requirement that a plaintiff show "volitional conduct" by a defendant to establish direct copyright infringement is not a new or distinct element of proof, but is simply another term for causation. The Court emphasized that "proximate causation" is a foundation of all torts, including copyright infringement.

Analyzing the leading copyright decisions concerning "volitional conduct" in light of the familiar principles of proximate causation leads to two lessons of relevance to this case. First, consistent with basic tort principles, courts look at a broad range of conduct in assessing a defendant's liability and have thus found liability in a wide array of circumstances where the defendant's conduct goes beyond wholly passive enablement of some third party's

[2] Whether a claim alleging direct infringement requires proof of "volitional conduct" on the part of the alleged infringer has been addressed by this Court but remains an open question in many circuits.

copying. Second, consistent with the same tort principles, courts properly reject artificial limits on direct copyright infringement.

II. Imposing liability based on a defendant's conduct that is the proximate, or legal, cause of a harm is a basic principle that has informed Anglo-American common law for centuries. Proximate causation asks whether the defendant's conduct has been so significant and important a cause that the defendant should be legally responsible for the plaintiff's injury. The inquiry is a flexible one. In the case of statutory torts, it is controlled by the legislature's intent in enacting the relevant statute. Generally, courts are guided by whether the plaintiff's injury was a foreseeable risk of the defendant's conduct and, in some cases, whether there is a direct relationship between the injury and the conduct.

*Giganews*' guidance that "volitional conduct" requires no more than proximate causation harmonizes most of the leading decisions on direct copyright infringement and shows that, as with tort law generally, a wide range of conduct may, alone or in combination, demonstrate sufficient causation to establish liability. Courts regularly find direct liability, therefore, where a defendant's conduct goes beyond mere passive enablement of another's copying by, for example, designing a system that enables copying of a category of

works selected by the defendant, even if the copying is triggered by a user request. Thus, when a defendant operates a service that itself copies or otherwise exploits the exclusive copyright rights set forth in 17 U.S.C. § 106, principles of proximate causation require a finding of direct liability when a defendant has engaged in any of a wide variety of actions that, alone or in combination, are the foreseeable and direct cause of copyright infringement.

An approach based on proximate causation necessarily rejects artificial limitations on direct liability. Tort law looks to each actor who is *a* (not *the*) proximate cause of an injury. It follows that, in situations, as here, where a business and a user may both be involved in making a copy of a copyrighted work or otherwise exploiting the copyright owner's exclusive rights under 17 U.S.C. § 106, multiple actors may be held directly liable for the same infringement, and the automation of otherwise infringing conduct does not shield the business from direct liability. The availability of secondary-infringement causes of action is no ground for redrawing the parameters of direct copyright infringement to shield direct infringers from liability.

III. Because each of the exclusive rights protected under the Copyright Act protect against different types of exploitation, an analysis of proximate cause should take into account the differences between different types of

infringement. This approach is consistent with tort law, where the application of proximate cause principles is guided by the nature of the underlying statutory cause of action. It is also consistent with recent Supreme Court precedent in the copyright context and should be applied in this case.

## ARGUMENT

### I. The Court Should Further Clarify the Role of Causation in Assessing Claims of Direct Copyright Infringement.

#### A. This Court's Recent Decision in *Giganews* Leaves Open Important Questions About the Scope of Direct Infringement.

In *Giganews*, the Ninth Circuit addressed a legal issue that has divided courts and commentators for many years: whether a claim of direct copyright infringement requires proof that a defendant's actions amounted to "volitional conduct," as some other courts have held, and, if so, what volitional conduct means.[3]

In reviewing the decisions of other courts holding that a "volitional conduct" requirement exists, this Court observed that "volitional conduct" is not a new or distinct requirement of copyright law, but merely another way of describing the requirement that a plaintiff alleging direct infringement must

[3] Although this case raises issues concerning both direct and indirect liability, this brief focuses solely on direct liability.

show "causation" by the alleged infringer. *Giganews*, 847 F.3d at 666-67 (citing *Fox Broad. Co. v. Dish Network LLC*, 747 F.3d 1060 (9th Cir. 2014)). The Court added that "[w]e wish to emphasize that the word 'volition' in this context does not really mean an 'act of willing or choosing' or an 'act of deciding,'" but "'simply stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts.'" *Id.* (quoting 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.08[C][1] (Lexis 2017)).

While the Court concluded in *Giganews* that the basic tort principles of proximate causation form the basis of liability for direct copyright infringement, it did not have occasion to address specifically how proximate causation is understood in traditional tort law and how that understanding should guide courts' direct-infringement determinations in copyright law. This case presents an opportunity to do so. Such an analysis shows that proximate causation is a flexible standard for liability and that the leading direct-infringement copyright decisions are in harmony with the standard. Indeed, reading the leading decisions concerning "volitional conduct" in light of the familiar principles of proximate causation leads to two lessons of relevance to direct-infringement cases like this one.

First, although a defendant's conduct is not likely to be sufficiently causal to qualify for direct liability where the defendant does nothing more than supply the means for others to make copies, courts should look at the totality of a defendant's actions and in fact have found liability in a wide array of circumstances where a defendant's conduct goes beyond wholly passive enablement of copying by others.

Second, artificial limits on liability, such as a "most important cause" test or a "button-pushing" test, are inconsistent with both the principles of proximate causation and copyright precedent. If imposed, such limits would lead to direct copyright infringers improperly and unfairly avoiding liability at the expense of the legitimate rights of copyright holders. Thus, this Court should expressly recognize that a wide variety of conduct can give rise to direct copyright-infringement liability; it is not a defense to direct liability that another actor joining in the activity may also be directly liable for the same infringement; and the automation of otherwise infringing conduct does not shield a defendant from direct liability.

### B. *Giganews* Helped Dispel Years of Uncertainty by Clarifying that "Volitional Conduct" Means Causation.

Copyright infringement "is a strict liability offense in the sense that a

plaintiff is not required to prove unlawful intent or culpability." *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 89 (2d Cir. 2016); *see also Buck v. Jewell-La Salle Realty Co.*, 283 U.S. 191, 198 (1931) ("Intention to infringe is not essential under the act."). "To establish infringement," only "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).[4]

In a widely cited 1995 opinion, *Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995) ("*Netcom*"), the court addressed the second element as it applied to direct infringement in the online environment at the dawn of the internet age. Courts were just beginning to grapple with how to apply traditional copyright doctrines in the new internet environment. And of particular relevance, Congress had not yet enacted the Digital Millennium Copyright Act, which affords safe harbor protection against infringement liability under certain circumstances to services including internet service providers ("ISPs"), storage providers,

[4] The word "copying" in *Feist* "is shorthand for the infringing of any of the copyright owner's . . . exclusive rights." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) (quotation omitted).

and search engines. *See* 17 U.S.C. § 512. The *Netcom* court tackled the question of when it was appropriate to expose ISPs to liability for the incidental copies made by their own equipment in the course of operating services for copying, distributing, and transmitting files sent and received by users—processes the court characterized as "necessary for the functioning of the Internet." 907 F. Supp. at 1372. With regard to potential service-provider liability for direct copyright infringement, the court observed that "[a]lthough copyright is a strict liability statute, there should still be some element *of volition or causation* which is lacking where a defendant's system is merely used to create a copy by a third party." *Id.* at 1370 (emphasis added).

Since the *Netcom* decision, courts and commentators have disagreed over whether a "volitional conduct" requirement exists and, if it does exist, what it means. *Compare Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008) ("*Cablevision*") ("[V]olitional conduct is an important element of direct liability."), *with Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 55 (1st Cir. 2012) (noting that the "'volitional act' position" had been raised in other circuits with only "varying degrees of success," and refraining from deciding whether such a requirement exists for a reproduction right claim), *and* Rebecca Giblin & Jane C. Ginsburg,

*We (Still) Need To Talk About* Aereo*: New Controversies and Unresolved Questions after the Supreme Court's Decision*, 38 Colum. J.L. & Arts 109, 143 (2015) ("Whether or to what extent 'volition' is in fact a predicate to a finding of infringement . . . invites debate.").

The Second Circuit's *Cablevision* decision has been the subject of particular criticism. *Cablevision* reversed a district court finding that the defendant had engaged in direct infringement by designing and operating a system that made recordings of television programs on its own servers once users selected a program to record. Disagreeing, the Second Circuit held that the plaintiff had failed to prove the necessary "element" of volitional conduct on the part of the defendant. But Nimmer described the Second Circuit's "reference to volition as an 'element'" of a copyright claim as contrary to "[l]egions of cases, up to the Supreme Court level." 4 *Nimmer* § 13.08[C][1]. And Goldstein criticized *Cablevision* for suggesting that a requirement that a defendant act with "volition" could in some circumstances mean that "liability for direct infringement be imposed only on the individual who presses the 'record' button," when copyright law instead requires that "*anyone* sufficiently implicated in the final result will be held to account." 2 Paul Goldstein, *Goldstein on Copyright* § 7.0.2, at 7:8.2-7:8.2-1 (3d ed. Lexis 2017) (emphasis added).

Nimmer noted that some of the disagreement about "volitional conduct" stems from *Netcom*'s introduction of the term "volition," which has been subject to multiple interpretations, including whether an infringing act must involve some mental state, such as being knowing or intentional. "That single reference to 'volition' has caused tremendous ferment," 4 *Nimmer* § 13.08[C][2], as reflected in the "diversity of approaches to volition" that reveal "confusion" and results that "have been far from consistent," Eleanor M. Lackman & Scott J. Sholder, *The Role of Volition in Evaluating Direct Copyright Infringement Claims Against Technology Providers*, 22 N.Y.S.B.A. Bright Ideas 3, 7-8 (Winter 2013) (collecting cases).

Against that background, this Court's *Giganews* decision dispelled some of the uncertainty by holding that "'[t]he so-called "volition" element of direct infringement is *not* a judicially-created element of intent or knowledge; it is a *basic requirement of causation.*'" 847 F.3d at 666 (emphasis added; quoting district court decision, 2014 WL 8628034, at *7 (C.D. Cal. Nov. 14, 2014)); *see id.* ("[D]irect liability must be premised on conduct that can reasonably be described as the direct cause of the infringement." (quotation and emphasis omitted)). But in clarifying that "volitional conduct" is best understood as an ap-

plication of the familiar principles of proximate cause, not a knowledge or intent requirement, this Court did not take the next step and discuss the implications of grounding direct liability of copyright liability in proximate causation. This brief next discusses those implications.

## II. Determining Proximate Causation in Tort and Copyright Law Requires an Analysis of the Totality of an Alleged Infringer's Conduct.

Identifying proximate causation as a requirement for finding liability for direct copyright infringement leads to the natural and necessary conclusion that a wide variety of conduct by defendants can supply the causation that requires the imposition of liability. Many leading direct-infringement copyright cases are in fact consistent with, and their holdings justified by, the law of proximate causation.

### A. Proximate Causation Is a Familiar and Well-Established Doctrine for Delineating the Scope of Liability.

It is a basic principle of tort law that after a defendant's action is determined to be a factual (or "but-for") cause of the plaintiff's injury, the question remains whether the defendant should be held legally responsible for that injury. As the Supreme Court recently explained in a case involving false-advertising claims, "[f]or centuries" Anglo-American common law has looked to "'the proximate cause, and not to any remote cause'" to answer that question.

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014) (quoting *Waters v. Merchants' Louisville Ins.*, 11 Pet. 213, 223 (1837)). "[T]he phrase 'proximate cause,'" also known as legal cause, "is shorthand for the policy-based judgment that not all factual causes contributing to an injury should be legally cognizable causes." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 701 (2011); *see also* Restatement (Second) of Torts (1964) at 544 (index equating proximate and legal cause).

In a passage quoted first by the Second Circuit in *Cablevision* and again by this Court in *Fox Broadcasting*, a leading torts treatise put it this way: Proximate causation asks whether the defendant's conduct "has been so significant and important a cause that the defendant should be legally responsible." W. Page Keeton et al., *Prosser and Keeton on Torts* § 42, at 273 (5th ed. 1984); *see also Cablevision*, 536 F.3d at 132; *Fox Broad.*, 747 F.3d at 1067.

"[C]ourts have a great deal of experience applying [the principles of proximate causation], and there is a wealth of precedent for them to draw upon in doing so." *Lexmark*, 134 S. Ct. at 1390. These principles seek to vindicate certain policy objectives by considering, for example, whether a particular injury was "within the scope of the risk" that could reasonably be foreseen as a result of the defendant's actions and whether there was some "superseding or

intervening cause" that should relieve the defendant of liability. *Pacific Operators Offshore, LLP v. Valladolid*, 565 U.S. 207, 225 (2012) (Scalia, J., concurring) (quotation omitted). In this way, in ascertaining whether particular conduct is a proximate cause of a particular injury, courts benefit from a reservoir of precedents that "furnish illustrations of situations which judicious [men and women] upon careful consideration have adjudged to be on one side of the line or the other." *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 839 (1996) (quotation and citation omitted).

### B. In the Areas of Both Tort Liability and Copyright Infringement, Courts Have Identified a Wide Range of Conduct That Demonstrates Sufficient Causation To Establish Direct Liability.

The Supreme Court has instructed that proximate causation is "a flexible concept that does not lend itself to a black-letter rule that will dictate the result in every case." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008) (quotation omitted). In each case, "[p]roximate-cause analysis is controlled by the nature of the statutory cause of action," *Lexmark*, 134 S. Ct. at 1390, and "legislative intent is the controlling consideration," *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 477 n.13 (1982). Courts are to look to "previously decided cases [to] identify factors that circumscribe and guide the exercise of judgment in deciding whether the law affords a remedy in specific

circumstances." *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 537 (1983).

"Proximate cause is often explicated in terms of foreseeability or the scope of the risk created by the predicate conduct." *Paroline v. United States*, 134 S. Ct. 1710, 1719 (2014); *see also Milwaukee & St. Paul R. Co. v. Kellogg*, 94 U.S. 469, 475 (1877) (requiring that the injury be "the natural and probable consequence" of the defendant's actions); 3 Stuart M. Speiser et al., *The American Law of Torts* § 11:3, at 68 (West 2017) ("By far the most treated and most discussed aspect of the law of proximate or legal cause is the so-called doctrine of foreseeability.").

In some contexts, courts have gone further to require "some direct relation" between the injury and alleged cause as "informed by the concerns set out in the [statutory] text." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 272 n.20 (1992). At most, therefore, the proximate cause requirement limits liability to all "direct and foreseeable results" of the defendant's actions. *Paroline*, 134 S. Ct. at 1719, 1722; *see also Giganews*, 847 F.3d at 666 ("[D]irect liability must be premised on conduct that can reasonably be described as the direct cause of the infringement." (quotation and emphasis omitted)).

This understanding of the basic contours of proximate cause harmonizes most of the leading decisions on direct copyright infringement and shows that, as with tort law generally, a wide range of conduct may, alone or in combination, demonstrate sufficient causation to establish liability for direct infringement under the Copyright Act. This point is well illustrated by examination of the question presented in a number of cases, from *Netcom* to *Giganews*, and which is also presented here: Where a defendant operates a service that itself copies or otherwise exploits the exclusive rights set forth in 17 U.S.C. § 106, when is the defendant's conduct sufficiently causal for direct infringement liability to be found?

Courts have held that when the evidence shows that a defendant does *nothing more than* supply the means for others to make copies or otherwise exploit copyrighted works, the defendant's conduct is not sufficiently causal for it to be liable for direct infringement. *See, e.g.*, *Giganews*, 847 F.3d at 670; *BWP Media USA, Inc. v. T&S Software Assocs., Inc.*, 852 F.3d 436, 442 (5th Cir. 2017); *Netcom*, 907 F. Supp. at 1372; *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) ("[S]omething more must be shown than mere ownership of a machine used by others to make illegal copies."). These holdings can be understood as based on a conclusion that copyright infringement

arising from such activity is not both sufficiently foreseeable and sufficiently the direct result of the defendant's conduct to allow for direct liability.

Consistent with the rationale underpinning proximate cause, this conclusion appears to reflect a judgment that those who do no more than passively enable copying by others and who are uninvolved in deciding what is copied, should not bear responsibility for direct liability (although they may be liable for indirect infringement). An example of such a judgment can be found in *Netcom*. There, addressing claims against an ISP whose servers were set up to accept, temporarily store, and forward postings made by users to other USENET providers, the court rejected direct liability and reasoned that holding the ISP liable for direct copyright infringement "could lead to the liability of countless parties whose role in the infringement is nothing more than setting up and operating a system that is necessary for the functioning of the Internet." *Netcom*, 907 F. Supp. at 1372.

But there are many other situations that do not fit into the narrow parameters described in *Netcom*. Courts have recognized a wide array of conduct that can subject a defendant to direct liability for copyright infringement

because the defendant's conduct is more than passive and goes above and beyond merely providing technology and operating equipment that is "necessary for the functioning of the Internet." *Id.* Examples of this conduct include:

- Retransmitting television programming from defendants' servers to users' computers, infringing the public performance right, 17 U.S.C. § 106(4), even where the process of retransmitting the programming is triggered by a user request. *See American Broadcasting Cos. v. Aereo, Inc.*, 134 S. Ct. 2498, 2503 (2014); *Disney Enters., Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 971 (C.D. Cal. 2016), *aff'd on other grounds*, 869 F.3d 848 (9th Cir. 2017). In *Aereo*, the Supreme Court held that the defendant's service, which was made up of "servers, transcoders, and thousands of dime-sized antennas" and streamed "broadcast television programming over the Internet" to paying subscribers, directly infringed the copyright holder's public performance right. 134 S. Ct. at 2503. The Court drew an express distinction between an entity that "merely supplies equipment" and one that "engages in activities like Aereo's." *Id.* at 2504.

- Initiating the copying, distribution, display, or performance of copyrighted works, even when doing so as part of pre-programmed automated processes. Thus, in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th

Cir. 2007), this Court held that a prima facie case of direct infringement of the public display right, 17 U.S.C. § 106(5), had been made against a defendant whose "computers . . . initiate[d] and control[led] the storage and communication" of copies of plaintiffs' copyrighted images as part of the regular operation of the defendant's search engine service, *id.* at 1160 & n.6; *see also Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.*, 338 F. App'x 329, 336 (4th Cir. 2009) ("The fact that Sprint's computers generated copies and loaded these copies into RAM automatically does not absolve Sprint of liability for copyright infringement.").

- Selecting the copyrighted works that a defendant's service copies, distributes, displays, or performs, even if that selection is designed into the regular operation of the defendant's software and aimed at an entire category of works. Thus, in *MP3tunes*, the Second Circuit affirmed a jury finding of liability for infringement of the reproduction right in plaintiffs' copyrighted album cover images, 17 U.S.C. § 106(1), because the company designed its music-locker streaming service to respond to users uploading songs by automatically retrieving copies of the album art from a third-party website. *See* 844 F.3d at 96; *see also Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d

640, 657 (S.D.N.Y. 2013) (finding direct liability where the defendant's software "scan[ned] a user's computer to build a list of eligible files that consists solely of protected music purchased on iTunes") (emphasis omitted), *appeal pending* No. 16-2321 (2d Cir. 2016); *Smith v. BarnesandNoble.com, LLC*, 143 F. Supp. 3d 115, 122 (S.D.N.Y. 2015) ("Courts have looked to the purpose and general use of the service in question, finding 'volitional conduct' where a service or program was designed solely to collect and sell copyrighted material." (citation omitted)), *aff'd on other grounds*, 839 F.3d 163 (2d Cir. 2016).[5]

- Taking "active measures" to increase the availability on defendants' servers of infringing copies of recorded music, including by creating servers dedicated to MP3 files, increasing the amount of time the files were retained on the servers, and exercising control over recorded music available on the service by deciding which sources of MP3 files to accept on the service, infringing the plaintiffs' public distribution right, 17 U.S.C. § 106(3). *See*

[5] Reflecting a recognition that evidence of selection of copyrighted content establishes direct infringement, in *Giganews* this Court pointed out that the plaintiff had "provide[d] no evidence showing" that the defendant had "selected any material for upload, download, transmission, or storage[,] or instigated any copying storage or distribution." 847 F.3d at 670; *see also CoStar Grp.*, 373 F.3d at 556 (emphasizing that defendant did "not attempt to search out or select photographs for duplication").

*Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 148-49 (S.D.N.Y. 2009). These and other activities combined to "'transform[] [d]efendants from passive providers of a space in which infringing activities happened to occur to active participants in the process of copyright infringement.'" *Id.* at 149 (quoting *Playboy Enters., Inc. v. Russ Hardenburgh, Inc.*, 982 F. Supp. 503, 513 (N.D. Ohio 1997)); *see also BarnesandNoble.com*, 143 F. Supp. 3d at 123 (discussing cases in which "defendants were found to have engaged in volitional conduct even though a user or customer 'presses the button' to make the copy" because the "defendants actively encouraged and benefited from the infringing copying activity and in fact set up their services around such activity"); *Giganews*, 847 F.3d at 667 ("[T]he distinction between active and passive participation remains a central part of the analysis of an alleged infringement." (quotation omitted)).

- Even in a copyright decision that found no direct liability because of a lack of "volitional conduct," the Second Circuit in *Cablevision* recognized that *causation-based* grounds for direct liability may exist in other circumstances, noting that "[w]e need not decide today whether one's contribution to the creation of an infringing copy may be so great that it warrants holding that

party directly liable for the infringement, even though another party has actually made the copy." 536 F.3d at 133; *see also Fox Broad.*, 747 F.3d at 1067-68 (citing this passage and noting that a business's rules controlling how a user can make and store copies may be relevant to the business's liability for direct infringement).

Evaluating these rulings through the lens of traditional proximate causation, one sees that they are consistent with a judgment that a defendant commits direct infringement when its conduct foreseeably and directly causes copyright infringement, and that a defendant can engage in such causal conduct in a variety of ways.

### C. Artificial Limitations on Liability for Direct Copyright Infringement Are Contrary to Both Proximate Cause Doctrine and Copyright Precedent.

The law of proximate causation and established copyright precedent regarding direct infringement reject attempts to draw artificial limitations on direct liability. We address some examples here:

#### 1. Multiple Actors May Be Directly Liable for the Same Infringement.

Direct liability applies to all actors whose conduct has been a sufficient cause of an infringement, not just to the actor whose conduct is closest in time to the infringement.

Courts look to *each* actor who is *a* (not *the*) proximate cause of the injury in assessing liability in tort. *See Prosser* § 42, at 273. Although the word "proximate" "places an entirely wrong emphasis upon the factor of physical or mechanical closeness," *id.* at 273, it "simply is not the law" that only the last actor in a causal chain is the proximate cause for a plaintiff's injury, Dan Dobbs et al., *Dobb's Law of Torts* § 208 (2d ed. West 2017). To the contrary, "the first tortfeasor in a sequence of events *as well as* the last is *often* a legally responsible cause." *Id.* (emphasis added); *see also Henderson v. Nat'l R.R. Passenger Corp.*, 412 F. App'x 74, 85 (10th Cir. 2011) (proximate cause "need not be the only cause, nor the last nor nearest cause" under New Mexico law (quotation omitted)); *Levy v. Minnesota Life Ins.*, 517 F.3d 519, 524 (7th Cir. 2008) (same under Illinois law); *Joseph B. Thomas*, 86 F. 658, 664 (9th Cir. 1898) (same under federal maritime law).

The same rule applies in copyright cases. Thus, in *Aereo*, the Supreme Court held that the defendant internet retransmission service was liable for performing the plaintiffs' television programming even though the service's users *also* performed the works and the users engaged in the act closest in time to the performance by choosing a channel and clicking a link. *See* 134

S. Ct. at 2506 ("Aereo, *and not just its subscribers*, 'performs' (or 'transmits')" (emphasis added; brackets omitted)).

Courts thus hold that "[c]opyright infringement is in the nature of a tort, for which *all* who participate in the infringement are jointly and severally liable." *Gregory*, 689 F.3d at 57-58 (emphasis added; quotation omitted); *see id.* (affirming judgment that priest who posted infringing content and archbishop who directed the post were both liable for direct infringement). "American copyright law" does not "force courts to choose between one defendant or another when it is the concerted acts of each that produced the infringement. The doctrine of joint liability ensures that *all* who participate in the act of infringement will be liable." 2 *Goldstein* § 7.0.2, at 7:8.2-1. Although its rulings did not uniformly reflect this understanding, *see, e.g.*, E.R. 28-29, 394-95, the district court here accepted this principle, correctly describing *Aereo* as "making clear that *multiple* parties may *proximately* cause direct infringement," E.R. 28 (emphasis added).

### 2. An Actor Is Equally Subject to Direct Liability Whether Its Infringing Conduct Is Automated or Manual.

Nor does proximate cause provide that only the last act of a human—such as pushing a "download" button, without consideration of the party who

created the software behind the button—can result in liability for direct infringement. Much like its rejection of the "nearest cause rule," the Prosser treatise explains that tort law has long jettisoned the notion that responsibility may only be placed "upon the last culpable human actor and exempt all those antecedent in time." § 42, at 277. *See e.g.*, *County of Maricopa v. Maberry*, 555 F.2d 207, 212 (9th Cir. 1977) (noting the "last human wrongdoer" rule is "quite out of line with modern ideas of proximate cause").

Copyright law reflects the same principles, as courts agree that a defendant's choice to automate its infringing conduct is no defense to direct infringement. Thus, in *Aereo*, the Supreme Court specifically rejected the contention that a defendant was excused from liability for direct infringement of the public performance right because its on-demand transmission of television programs to subscribers was automated. *See Aereo*, 134 S. Ct. at 2507. The dissent had urged a ruling that the defendant was not liable for direct infringement because its transmissions were sent by an automated system in response to requests made by users. *Id.* at 2512-14, 2516 (Scalia, J., dissenting). But the Court rejected that proposition, explaining that in light of the Copyright Act's text and legislative history, evidence that the defendant's system trans-

mitted requested programs "[o]nly . . . in automatic response to the subscriber's request" was "not critical" when establishing liability for direct infringement. *Id.* at 2507; *see also Amazon.com*, 508 F.3d at 1160 & n.6 (prima facie case of direct copyright made out because of operation of defendant search engine's computers).

Similarly in *MP3tunes*, the Second Circuit rejected a defendant's contention that his service "could not have engaged in a 'volitional act' with respect to the cover art infringement because the retrieval of that art was not directed by [his service] MP3tunes but rather obtained from Amazon.com at the direction of the user when the user selected a song." 844 F.3d at 96; *see id.* at 87 (defendant's software would "automatically go check for . . . cover art" (quotation omitted)). The defendant was directly liable, the court explained, because his service's software "was *designed* to retrieve one aspect of a copyrighted work (the album art) whenever a user uploaded another aspect of a copyrighted work (the song)." *Id.* at 96 (emphasis added); *see also ReDigi*, 934 F. Supp. 2d at 657 (stating that absolving the defendant of direct liability on the sole ground that the "process is itself automated . . . would be a distinction without a difference" because the defendant "programmed [its] software to choose copyrighted content"); 2 *Goldstein* § 7.0.2, at 7:7 ("It is the

[defendant's] concerted steps and their consequences, not the accident of whether those steps were executed by humans or automatons, that is the pivot of liability.").

### 3. The Existence of Secondary-Infringement Causes of Action Is No Basis for Narrowing the Scope of Direct Copyright Infringement.

It would be contrary to both the law of proximate causation and copyright precedent to arbitrarily "construe the boundaries of direct liability more narrowly" in copyright cases, *Cablevision*, 536 F.3d at 132, just because of the existence of secondary-infringement causes of action.

First, while the Supreme Court in *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), recognized that "the lines between direct infringement, contributory infringement, and vicarious liability are not clearly drawn," *id.* at 435 n.17 (quoted in *Cablevision*, 536 F.3d at 133), the Court did not find that circumstance to be problematic, nor did it authorize courts to redraw the boundaries to excuse actors from direct liability for their causal conduct. Indeed, as noted above, the Supreme Court emphasized in 2008 that proximate cause is "a flexible concept" that is not supposed to "lend itself to a black-letter rule that will dictate the result in every case." *Bridge*, 553 U.S. at 654.

Second, it would be wrong to assume that in the absence of a cause of action for direct liability "the doctrine of [indirect] liability stands ready to provide adequate protection to copyrighted works." *Cablevision*, 536 F.3d at 132. Indirect theories of copyright liability—namely, inducement, contributory infringement, and vicarious infringement—are in essence different causes of action from a claim for direct infringement. They have different required elements of proof, *see, e.g.*, *MGM Studios Inc. v. Grokster Ltd.*, 545 U.S. 913, 930, 931, 934 (2005), and require separate proof that third parties committed direct infringement, *see id.* at 930. Indirect infringement claims thus place additional obstacles to copyright owners' enforcement of their rights. Without the availability of a direct infringement claim, copyright owners injured by a business's large-scale facilitation of infringement may in some cases be unable to satisfy additional secondary-infringement elements. In such cases, even in the face of large-scale infringement, copyright owners would be unable to obtain the "effective—not merely symbolic—protection" of their rights that the Copyright Act exists to provide. *Sony*, 464 U.S. at 442.

## III. Determining Causation Requires Analyzing Infringement of Different § 106 Exclusive Rights Differently.

There is a corollary to this Court's determination that principles of proximate causation underline liability for direct copyright infringement. *See Giganews*, 847 F.3d at 666. It is that because each of the Section 106 exclusive rights protects against different types of exploitation of copyrighted works, an analysis of proximate causation must take into account the differences between different types of infringement.

In *Cablevision*, the Second Circuit recognized the need to treat infringements of different exclusive rights differently. After concluding that a "volitional conduct" requirement existed for direct infringement of the reproduction right of 17 U.S.C. § 106(1), the court cautioned that such a requirement would not necessarily extend to claims of infringement of the Section 106(4) public performance right because "[t]he definitions that delineate the contours of the reproduction and public performance rights *vary in significant ways*. For example, the statute defines the verb 'perform' . . . but not the verbs 'reproduce' or 'copy.'" 536 F.3d at 134 (emphasis added; citation omitted). This approach is consistent with that of tort law with regard to proximate causation, which, as noted above, "is controlled by the nature of the statutory cause of

action," *Lexmark*, 134 S. Ct. at 1390, with consideration given to "legislative intent," *Blue Shield of Virginia*, 457 U.S. at 478 n.13 (1982).

Indeed, this is exactly how the Supreme Court determined liability for direct infringement in *Aereo*. Rather than impose the "volitional conduct" test urged by the dissent, which would have rejected direct infringement because "the customer chooses the content and activates the copying function," 134 S. Ct. at 2511, 2513 (Scalia, J., dissenting) (emphasis omitted), the *Aereo* majority based its direct infringement ruling on the express language of the Copyright Act and its legislative history. The Court proceeded by asking, "does Aereo 'perform' . . . ?" 134 S. Ct. at 2504. And it answered that question by analyzing the statutory definitions of "perform" and "transmit," and the legislative history that made clear that Congress intended that retransmitters like the defendant be directly liable for infringement of the public performance right. *See id.* at 2504-06.

In this case, VHT has alleged infringements of the reproduction, public distribution, and public display rights, and the right to prepare derivative works. *See* 17 U.S.C. §§ 106(1), (2), (3), (5). These rights are described differ-

ently in Section 106 and contain definitions in Section 101 that further delineate the rights. *See* 17 U.S.C. § 101. This Court's analysis of causation should take into account those differences.

For example, many of VHT's direct-infringement claims involve the public display of its images over the internet on Zillow's two platforms. *See* VHT Br. 2-3. Just as the Supreme Court in *Aereo* began its analysis of the public performance right with the statutory definitions of "perform" and "transmit," so too should this Court begin with the definitions of "display" and "transmit." Section 101 of Title 17 provides that "[t]o 'display' a work means to show a copy of it, either directly or by means of . . . any . . . device or process." And just as the Supreme Court in *Aereo* supported its analysis with the Act's legislative history, so too should this Court. For example, the Copyright Act's legislative history shows Congress' intent that multiple actors could all be directly liable for the same public display of a copyrighted work. *See* H.R. Rep. No. 1476, 94th Cong., 2d Sess. 63 (1976) ("[T]he concept[] of . . . public display cover[s] *not only* the initial rendition . . . , but also *any* further act by which that rendition . . . is transmitted or communicated to the public." (emphasis added)).

VHT's brief addresses the evidence it presented of the many ways in which Zillow directly caused VHT's images to be shown to the public, including by soliciting and selecting content for its real estate listing platform, selecting the initial launch set of images to include in its Digs home improvement platform, initiating the display of images on the Digs platform after users had abandoned the process of choosing the images for display, actively encouraging users to copy images from the listing platform for display on the Digs platform, and reviewing images before display for content and style. *See* VHT Br. 35. Consistent with the law's recognition that multiple actors may be directly liable for the same infringement, VHT also presented evidence that Zillow had entered into agreements with sources for the right to display images and, after VHT gave notice to Zillow that licenses to VHT images uploaded by sources had expired, Zillow chose to continue displaying those images anyway. *See id.* at 5, 55-56.

This Court should evaluate direct liability for infringement of the public display right based on the foreseeable and direct consequences of Zillow's conduct, consistent with the language and purpose of the Copyright Act.

## CONCLUSION

The Court should apply the proximate cause principles for direct copyright infringement liability recognized by this Court in *Giganews* and reverse the district court's rulings inconsistent with those principles.

Respectfully submitted,

/s/ Thomas G. Hentoff

THOMAS G. HENTOFF
CHANAKYA A. SETHI*
WILLIAMS & CONNOLLY LLP
*725 Twelfth Street, N.W.*
*Washington, DC 20005*
*(202) 434-5000*

DECEMBER 18, 2017

* Admitted only in New York. Practice limited to federal litigation outside the District of Columbia and ADR proceedings.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENT, AND TYPE STYLE REQUIREMENTS

I hereby certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5), Fed. R. Civ. P. 32(a)(7), and Circuit Rule 32-1(a) because it contains 6,998 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32-1(c); and

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in Century Expanded BT 14-point font.

Dated: December 18, 2017

/S/ Thomas G. Hentoff
THOMAS G. HENTOFF

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be filed electronically the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellant CM/ECF system on December 18, 2017. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: December 18, 2017

/S/ Thomas G. Hentoff
THOMAS G. HENTOFF